64 Connor against Department of Veterans Affairs. Mr. Kirkpatrick. Thank you, your honor. I appreciate it. I know we're the last case of the day and it's before lunch, but Joel Kirkpatrick on behalf of Stephen Connor, the appellant in this case, and may it please the court. We're here, your honors, and I think the court has seen a shift as the considers the section, I'm sorry, the statute 714 discipline cases for the federal government. And I know this this court, especially Judge Newman, I know you participated in some recent cases, the Brenner case and the Harrington case, and I know Judge Dyke has also participated in the Harrington cases. It really leads us to a question of how the courts, whether it be the Merit Board, whether the agency itself, how they handle discipline cases and how they ensure that a client gets their due process met. In this case, that did not happen. What we're here to talk about is reasonableness of penalty and whether or not the decision was arbitrary or not. And I think what's really interesting as I see these cases, as I litigate these cases with the VA, is the agency has taken a position from the beginning that Douglas, any kind of Douglas analysis, has somehow been extinguished from statute 714, which I don't see that anywhere. The only thing that that we see that Douglas or that the 714 has done, it's done three things. It's made it a quicker response, times cut down the time to respond. It says that the AJ herself or himself at hearing cannot mitigate a penalty even if there's dismissed cases and the standard is no longer preponderant but substantial evidence. That's really all we have here. And you're not challenging the substantial evidence, Dan? No, I'm not. You know, I've talked to many judges at the board and I'm trying to figure out what exactly it is and some judges have also asked that question, but that's not really what we're here to challenge. I think what's important to understand is how this case came down. You had one charge with 27 specifications. It's clear from the record. It's clear from our brief. And the 97% of the case. Now, we certainly know that if there's a charge and with how many specifications there could be, only one specification gets sustained, then the charge gets sustained. The issue really comes down to is how the agency itself, in light of this of this court's decision starting with Sayers in early 2020 and building on cases such as Harrington and Brenner, how the court says, no, we're not just going to take a rubber-stamped decision. We're not going to take a rubber-stamped decision. Yes? Counsel, we don't necessarily have to have a global approach to dealing with 714 here. We're discussing a particular case. Right. And the AJ determined that Douglas factors were considered. And especially since 26 out of 27 charges were not sustained, that supports the idea that there wasn't just an arbitrary determination here, that there was serious consideration to the penalty. Yeah, I appreciate that. I understand. I think our argument is that it's come through in our brief. And what with their decision to fire my client? Was the agency reasonable or was it arbitrary? And what we did was, and I know we bored you in our brief with some of the issues with the discovery, but it's important to understand, the agency never considered any other cases on how they would handle this. And this assigned official himself had a case very similar where it was a five-day suspension. How can the agency argue that it's reasonable when they have something similar? In that case, he testified in hearing it, Appendix 846, that this case, Ms. Gillis, had a five-day suspension where the agency determined that there was patience at risk for four years. It's different. Is it fair to say that the heart of your argument is that the AJ didn't consider the comparator factor properly? My heart of my argument, Judge, really goes to the fact that the agency themselves never considered what would be a reasonable penalty before they fired my client. I say it's the pre-removal decision and then what happened afterwards. AJ found that the deciding official had considered most of the Douglas factors, and it seems to me the only one you're saying that wasn't considered is the comparator factor. Am I correct about that? Well, we dispute that and we've put in the appendix their discovery responses in the case. They initially said we don't have to consider anything as long as we believe that if our client committed this crime, committed this charge, that if I go through it and I find it's almost a arbitrary decision, then I can get rid of them. And we put that in there and it starts at the appendix at page 241. It goes to the list how they maintained that they didn't have to review any Douglas factors. And I know we put in there that seems to be a credibility argument that when they said they considered the Douglas factors, they shouldn't be believed because they didn't have to consider the Douglas factors, right? Well, Judge, I would agree. That's why we stuck in what the documents show, not what somebody says or whether I'm believable during my testimony, what the didn't review. It says in appendix 253, we didn't consider any other cases. We're not required to. We didn't even do that in this case. And then after the motion to compel and the reason we put that in there for you, Judge, is to show that there was a shift. Now, yes, I understand you're not here to consider credibility, but what we're showing you the documents is specifically the issue of what this court is now undertaking to say, wait a second, the agency can't run roughshod in I appreciate Judge Newman saying that this is not some global approach. If that was Judge Newman that said that to each case, it's a specific case. But when you when you have a situation where the design official specifically stated, I didn't consider any any any previous discipline and then he has his own case decided essentially at the same time that looked really similar. Suppose suppose the AJ is correct that as a factual matter, the deciding official here did consider comparator. Does that sink your case? Well, if if the if the AJ, well, let me term it this way, the issue that was brought up at here and I know that the hearing transcripts there and obviously you're not going to read all of it, but the point is if the if said he considered the case, there has to be a an objective standard to determine because to answer your question, Judge, in normal chapter 75 cases, and this is all I do, I do federal discipline cases, is that the comparator cases definitely show even after the sign if he's gonna say, well, I considered this and I didn't think it was the same, but I've had AJ say, wait a second, I can read these cases and they are the same or even more egregious than what the client is and mitigate on that on that standard. So to answer your question, I don't necessarily think it does sink our case because of the objective facts in the case with the comparator cases and the testimony of the deciding official about harm. How can this deciding official, and I know I'm, I know the agency argues that I'm trying to reweigh the evidence. I'm not. What I'm seeing is is that there's such a and obviously is counsel to this. I'm happy to see that the court opened up with stares and other things that we're not just going to rubber stamp these things because the discretion has been taken away from these AJs and so I don't think it sinks our case and I'm not trying to be cute with the court because I think there has to be an objective review just like this court has to the entire record. On the comparator factor, if the deciding official did consider comparable cases, what's the error? That, wait, wait, wait, wait, that the comparison shows that he was treating similarly situated people differently? Is that the argument you're making? It is, but it goes even deeper. If you'll indulge me, your honor, the point is this is the first time that this deciding official even talked about comparator cases that we were able to elicit on discovery that they had to give. They said they never looked. The record's clear at appendix 253 and 259 to 260 that he never even reviewed any comparator cases. So now here we are after the removal, at hearing, we're showing him, he says, well, yeah, they're not the same, but he never had a chance or never did review those cases when he was considering the discipline for my client and, you know, as this court stated in Brunner, a decision is arbitrary and capricious where the agency fails to articulate a rational connection between the facts found and the choice made. The choice was made without reviewing cases or without doing any kind of Douglas analysis that I think this court is starting to undertake in its Sayers decision and progeny that's come from this is that we just can't have agencies not being able to articulate reasonableness of penalty and they haven't done that. So is your argument that if the decision itself doesn't review the Douglas factors in writing, that that's not sufficient? That you can't have a deciding official come in later and say, well, I didn't document it in the written decision, but I consider these factors. You're saying that's not enough? Well, but if you look at his decision letter, which is at 48 of the joint appendix, there's not one record in there about him cases or I found it. That's my, that's my, that's not there. You're saying, you're saying that it has to be in the written decision itself and not just in the mind of the deciding official? Well, if the mind, if the deciding official doesn't communicate that, how are we going to handle that? But I see my time's probably up and I will reserve on rebuttal. Okay, Judge Dyke, do you want to pursue this point? No, thank you. Okay. All right. Then we'll save your rebuttal time and let's hear from the other side. Ms. Vomankova. Good morning, your honors. May it please the court. This case raises two questions on appeal. Could we just, could we talk a bit about that the last issue? I mean, here we have a situation in which the deciding official says ultimately that he reviewed the factors, but it's not in the decision itself. Is that itself error, not the decision? I mean, it does seem to me that there's a pretty good argument that he ought to document it at the time and not just after the fact. What's your response to that? Well, your honor, I have two responses to that. One, I think even in the context of chapter 75, where there's no dispute that the Douglas factors are in, there is flexibility on that point and as the board judge recognized, the board case law recognizes that it does not have to be included in the letter and that sort of subsequent testimony can be sufficient. Have we decided that issue before? Your honor, offhand, I'm not sure. I do know that sort of with the Douglas factors, the court has held that they are, even in the chapter 75 context, sort of are a guide, but they're neither a compulsory nor an exhaustive list and that you can, you know, I don't think that they have to be specified in the letter. Offhand, I don't have a site for that in this court because that, I think our primary point on this appeal is that in this case, that should really not matter because the Douglas factors should not be part of the section 714 penalty review and that they are, in fact, a mitigation tool under chapter 75. And so, in this case, you seem to have lost that issue in Sayers, right? So, I don't think we've lost, the issue that the Sayers court addressed was that some penalty review is still a part of section 714 and we accept that that is true. The question is, what is the nature of that penalty review and how is it supposed to proceed? And we submit that the type of penalty review that is available under section 714 is the sort of the arbitrary and capricious standards that historically the court has applied, which is the question of whether the penalty is so disproportionate to the offense as to amount to an abuse of discretion or otherwise prohibited by law. But there has to be a meaningful difference between the type of penalty review that was available under chapter 75 and the type of penalty review that the board undertakes in section 714. And that is driven by the fact that Congress clearly reduced the scope of authority that the board has in section 714 and that the board has to try and ease the discipline process for the VA. And that sort of has two components to it. One is the increase in deference that the agency gets and second is the reduction in certain procedural hurdles. And so, the type of penalty review that the board should undertake in section 714 should be meaningfully different and less than the type of penalty review that it did under chapter 75 when it had authority not only to review the penalty but also the broad authority that it inherited from the Commission to mitigate the penalty. And the board in Douglas itself articulates that distinction when it sort of adopts the standard of review that it will proceed with in chapter 75. And that's where the, you know, where we lift that distinction from. It was originally articulated by the board in Douglas itself. And so, in this case, just to go back one second to the question of what should happen with Mr. Conner. Mr. Conner's removal should be affirmed, sort of, regardless of whether the court agrees with us on this Douglas question. Because there's no question that even at the higher standard, which we submit is improper, that's the standard that the board applied in this case and found that the agencies who have met and what Mr. Conner... Yeah, but they're ignoring the question of whether that review of the Douglas fact, if let's assume it is required, has to be in the decision itself rather than just in the mind of the adjudicator. Well, Your Honor, I'm not sure that that specific question is one that Mr. Conner has validly raised. Certainly, he takes issue, he first takes issue with the content of the decision letter itself and his reply brief, which I would submit is insufficient. But what we have here is a number of credibility findings from the administrative judge that concludes that the deciding official did properly consider the facts underlying the Douglas factors. Okay, but let's assume you're right about that. But still, usually agencies are required to set forth their decision in writing so that it can be reviewed. I mean, if you're reviewing a decision of the FCC, the FCC can't come in and say, well, we didn't put it in the decision, but we really were thinking about it nonetheless, right? I mean, that's not the way agency decisions get reviewed generally. It's not by the agency personnel coming in later and saying, well, we didn't talk about it in the decision, but we thought about it. That doesn't count, right? That's correct, Your Honor. But in this case, the decision does set forth what the basis for the agency was in removing Mr. Conner and specifically, and the final decision is at Appendix page 48, that the level of discipline was appropriate given the furiousness of the offense and the gravity of the misconduct and the position of trust that Mr. Conner was in. And those things were the basis for the decision, and that's consistent with what Mr. Ducker testified to during the hearing, that this was the seriousness of the offense and the position of trust that Mr. Conner was in led him to lose that trust and that he could not sort of maintain him anywhere in the agency. And AJ found that testimony to be that Mr. Conner tried to cross-examine Mr. Ducker on this comparator evidence and that that somehow undermined the underlying decision that this penalty was warranted. And the administrative judge also considered that cross-examination and found it, frankly, to be not credible. And that there were differences and that both that Mr. Ducker, the deciding official, reasonably considered that comparator evidence, and also that it didn't support or, I guess, undermine his conclusion that the penalty of removal was reasonable in this case. And that's also the final conclusion of the administrative judge. After it goes through the Douglas factor analysis, which we submit was unnecessary for Section 714, the board sort of makes a separate and independent finding on the question that we agree is the central question for penalty review under Section 714, which is that the agency has shown that the seriousness of the offense, given the appellant's position, could justify removal. And that's at the very end of the decision on appendix pages 26 and 27. And that is the question that the Sayers Court told the board it has to consider. And that's the question that we submit as the proper standard for penalty review, which balances the concerns that the Sayers Court articulated about ensuring that there is, you know, a stopgap, a decision, that there is some review of the penalty, and that penalties that are an abusive discretion are not, you know, in the words of my colleague, just rubber stamps, but that still gives sufficient weight to the increase in deference and the meaningful reduction in the process of discipline disciplining employees that I think is undisputedly the purpose and intention of Congress in enacting Section 714. The one other point in terms of the heightened standards that the board applied in this case is the nexus requirement that they also found that the agency met in this case, and therefore Mr. Connor's removal should be affirmed, but that we submit with a question that the board should never have asked. That nexus requirement is, again, tied explicitly to the language in Chapter 75, that the discipline has to promote the efficiency of the service. That requirement is definitely not in Section 714. All Section 714 requires is that the performance or misconduct warrants such as the board, you know, the agency cleared an even higher hurdle in this case than it needed to have cleared, and so the Mr. Connor's specific removal should be affirmed, but that the court should clarify that that requirement is not present in Section 714 cases going forward. And so I guess at bottom, absent further questions from the court, our position is twofold. One is that Mr. Connor's removal in this case should be affirmed. The agency cleared what is indisputably the highest standard it could have cleared under Section 714, and the issues that Mr. Connor raises on appeal are fundamentally a request for this court to reweigh the evidence that was indisputably before the board and the administrative judge, and that the administrative judge found against Mr. Connor, and that's something that this court cannot do and does not do and should not do in this case. But second of all, you know, there is a split that is currently forming at the board in terms of the application of the Douglas factors to Section 714 penalty reviews, and the court should resolve that split and clarify and course correct that situation and specify that the Douglas factors are not part of the case. So I think that removing and explicitly narrowing the scope of authority that the board has with the intention of streamlining the discipline process for the VA in Section 714, that that removed the sort of broader reasonableness inquiry that the board used to engage in and that the board explicitly tied to its mitigation authority and the broad mitigation authority that it inherited from the Commission. And so applying the Douglas factors that the board used to articulate, which is the standard that the courts have historically applied for arbitrary and capricious penalty review, that that strikes the proper balance between the concerns articulated by this court and theirs and the intention of Congress to meaningfully reduce and meaningfully change the type of penalty review that the board undertakes in Thank you. We'll hear from Mr. Kirkpatrick. I want to hit back. The court asked counsel specifically, is it an error that they don't document the discipline if it's in the mind of the deciding official? Has this court addressed it? Yes, this court has addressed it. Ward versus U.S. Postal Service 634 F. 3rd 1274 discusses that in the context of a due process violation, if the agency does not give all the reasons why they removed somebody and how they arrived at that decision, this would fall under what we call a ward violation and the case has to be overturned. This court also addressed it a little bit in Stone versus Federal Deposit Insurance Corporation 179 F. 3rd 1368. The same thing that if a due process violation occurs, if the agency cannot articulate what they considered, if now the agency's proposing that Mr. Ducker knew about this but he didn't say that, then yes, he would be entitled to a new procedure. The issue really comes down to for the court is to consider what the agency just said. The agency wants it two ways. They want to say on one hand, the court should not review Douglas. It was an error that the A.J. considered Douglas and that kind of thing, but we do like the fact and we stated in our brief that the court did consider Douglas. It can't have it both ways. The agency also argued in its brief that the court should follow the hybrid method of Chapter 43 in a performance case. That's what 714 is. Well, the problem is Brenner came out a month later and said that's not the case. The issue that really comes down to this is to consider what the agency did at the time they fired my client and Mr. Ducker did not consider, did not memorialize, did not put down before 714. The VA, like all the other agencies, usually submitted what they call a Douglas factor worksheet, which would be part of the record, and they go through the 12 Douglas factors and say this one applies, this one doesn't apply, this is what I considered, this is what I didn't consider. They did none of that. The information and the material that we provide in the Joint Appendix demonstrates that and how they responded to our questions. If the court has any further questions, I'll be happy to entertain that. Okay, any more questions for Mr. Kirkpatrick? No. All right, in that case, with thanks to both counsel, the case is taken under submission. That concludes this panel's arguments for this morning. Thank you. The Honorable Court is adjourned until tomorrow morning at 10 a.m.